FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT M., | No. 1:18-cv-03135-JTR |
| Plaintiff, | ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 11, 15. Attorney D. James Tree represents Robert M. (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on August 5, 2014, alleging disability since

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

October 14, 2013, due to symptoms following an industrial electrocution, including confusion, disorientation, memory problems, and body shakes. Tr. 83. The applications were denied initially and upon reconsideration. Tr. 112-14, 119-23. Administrative Law Judge (ALJ) Keith Allred held a hearing on March 30, 2017, Tr. 50-76, and issued an unfavorable decision on July 31, 2017, Tr. 20-40. Plaintiff requested review of the ALJ's decision from the Appeals Council. Tr. 180. The Appeals Council denied Plaintiff's request for review on June 14, 2018. Tr. 1-6. The ALJ's July 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 27, 2018. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1962, and was 51 years old as of the alleged onset date. Tr. 38. He does not have a high school education or a GED. Tr. 54, 467, 585, 662. He worked most of his professional life as an electrician. Tr. 54, 467, 585. Due to multiple head traumas as a child and young adult, Plaintiff developed hydrocephalus and had a ventriculoperitoneal shunt placed in his mid-20s. Tr. 304

In June 2013, Plaintiff was electrocuted in a work accident. He did not immediately seek medical attention. A few days later, he presented to the emergency room with a bulge in his groin, which was diagnosed as a hernia, and was repaired the following month. Tr. 342, 350-51. Plaintiff continued to work as an electrician for a short time, but eventually felt as if his concentration and memory were deteriorating to the point that he was no longer safe to perform electrical work. Tr. 359. He reported worsening of his decades-long headache impairment, and worsening cognitive and social skills.

At the hearing, Plaintiff testified he was unable to work due to disorientation and confusion, and that he disliked being around people and thus was isolated at home much of the time and needed the comfort of his animals to calm himself down when anxious. Tr. 60-62.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 31, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 14, 2013, the alleged onset date. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: migraine disorder, anxiety disorder, social anxiety disorder, organic brain disorder, and affective disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24-27.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform medium exertion level work with the following limitations:

> He can lift or carry 50 pounds occasionally and 25 pounds frequently. He can sit for 6 hours in an 8-hour workday and can stand or walk for 6 hours with normal rest breaks. The claimant can occasionally climb ramps or stairs, balance, stoop, bend, squat, kneel, or crouch. He may never crawl or climb ladders, ropes or scaffolds. The claimant may have no exposure to hazards including unprotected heights or dangerous machinery. The claimant is able to perform the basic mental demands of competitive, unskilled work, including the ability to understand, remember, and carry out simple instructions. He can

respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. The claimant may have occasional interaction with supervisors, coworkers, and the general public.

Tr. 27.

At step four, the ALJ found Plaintiff was not able to perform his past relevant work as an electrician. Tr. 38.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including the jobs of hand packager, laundry laborer, and machine feeder. Tr. 38-39.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 14, 2013, the alleged onset date, through the date of the ALJ's decision, July 31, 2017. Tr. 39.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly rejecting medical and other opinion evidence[1]; (2) failing to properly address the listings at step three; and (3) improperly rejecting Plaintiff's subjective statements.

## DISCUSSION

**1. Medical opinion evidence**

Plaintiff argues the ALJ erred by failing to properly consider the medical opinion evidence of record. ECF No. 11 at 4-13.

---

[1] For clarity, the Court has addressed the assessment of the medical opinion evidence and the third party evidence under separate headings.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 5

### A. Acceptable medical sources

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830.

In weighing the medical opinion evidence of record, an ALJ must make findings setting forth specific, legitimate reasons for his assessment that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ).

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion by citing "clear and convincing" reasons; when a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons," based on substantial evidence, to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### i. Dr. Stobbe

In May 2014 Plaintiff was examined by Dr. Gary Stobbe through the University of Washington Headache Clinic. Tr. 359. Dr. Stobbe concluded that Plaintiff's symptoms were likely functional in nature, and that underlying anxiety was playing a large role in his dysfunction. Tr. 360. Dr. Stobbe opined that proper lifestyle alterations and treatment could improve his symptoms, but that would take some time, considering it had been a year since Plaintiff's injury, and he expected "another 6 to 12 months before we could expect him to be able to go back to work." *Id.*

While a medical provider's opinion on the ultimate issue of disability is not owed any "special significance," 20 C.F.R. § 404.1527(d), an ALJ is required to explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ did not mention this opinion in the decision. By failing to discuss this probative evidence, the ALJ erred.

Defendant asserts Plaintiff has not demonstrated harm, as Dr. Stobbe's report appeared to imply Plaintiff could not return to his prior work as an electrician, and not that he was unable to perform *any* work. ECF No. 15 at 12. Because the ALJ did not offer this explanation, and it is not immediately clear that Defendant's interpretation is correct, the Court declines to find the ALJ's error harmless on this basis.

### ii. Dr. Thompson

In March 2015, Plaintiff attended a neuropsychological evaluation with Dr. Jane Thompson. Tr. 455. Following a clinical interview and extensive objective testing over two days, Dr. Thompson concluded that "due to his severe anxiety and probable agoraphobia, along with his attention, memory, information processing speed, and executive function deficits, I do not believe Mr. McDaneld is capable of gainful employment in any capacity." Tr. 455. She felt with appropriate treatment

he may be able to reenter the workforce, but that it would take at least a year of therapies. *Id.* The ALJ gave Dr. Thompson's report mixed weight, noting that her ultimate conclusion on disability was reserved for the Commissioner, and that she did not provide an opinion regarding Plaintiff's residual mental capacities, making the basis for her opinion that he was unable to work "in any capacity" unclear. Tr. 35. The ALJ further noted that testing results were average or low average on many measures, that Dr. Thompson's opinion was at odds with the less severe conclusions of other mental examiners, and that she lacked longitudinal familiarity with Plaintiff. Tr. 35-36.

Plaintiff argues the ALJ's rationale was insufficient. ECF No. 11 at 5-9. The Court finds that, while not all of the ALJ's stated reasons are specific and legitimate, the ALJ offered sufficient reasons for giving this opinion lesser weight. The Regulations make clear that opinions on the ultimate issue of disability are not given any special significance. 20 C.F.R. § 404.1527(d)(3). The Commissioner also gives more weight to opinions that are well-explained. 20 C.F.R. § 404.1527(b)(3). Though her opinion was accompanied by significant objective testing, Dr. Thompson did not offer a functional capacity assessment to explain why she thought Plaintiff was incapable of gainful employment "in any capacity." The ALJ did not err in his discussion of this opinion.

### iii. Dr. Bachman

Plaintiff underwent a neuropsychological evaluation with Dr. David Bachman in September 2016, in connection with his worker's compensation claim. Tr. 565. Dr. Bachman concluded Plaintiff's current status made him ineligible to return to his previous work as an electrician. *Id.* He further stated Plaintiff was "not capable of conforming to any rigid job requirements and could not be relied on because of mental health deficiencies." Tr. 566. The ALJ gave this opinion partial weight, noting the opinion regarding returning to electrical work was consistent with the record. Tr. 36. The ALJ went on to note, however, that the

opinion was vague and inconsistent with other evidence of record, and contained internal inconsistencies with respect to Plaintiff's cooperation with the exam. *Id.*

Plaintiff asserts the ALJ's assessment is flawed as it failed to consider the entire context of the exam findings, and despite not having a longitudinal treatment history, Dr. Bachman conducted extensive objective testing in support of his findings. ECF No. 11 at 10-11. Plaintiff further argues that, had Dr. Bachman's opinion regarding unreliability been credited, Plaintiff would have been found unable to perform competitive work. *Id.* at 9.

The ALJ provided specific and legitimate reasons for discounting this opinion. Dr. Bachman did not offer any specific limitations regarding Plaintiff's ability to perform work in general, and did not explain what "rigid job requirements" or "could not be relied on" meant in terms of work-related functions. The ALJ's finding that the opinion is unreliably vague is supported by substantial evidence.

### iv. Dr. Friedman

Plaintiff underwent a psychiatric exam in January 2016 with Dr. Michael Friedman, in connection with his worker's compensation claim. Tr. 657. Dr. Friedman noted Plaintiff's "presentation suggested global cognitive dysfunction to the point that I am surprised that he is able to live independently." Tr. 668. He went on to note that Plaintiff's "presentation suggests that he would not be able to return to gainful employment. This man works as a high voltage electrician. He does not believe he would be safe to return to employment." *Id.* The ALJ gave little weight to this report, noting that it was not certain whether Dr. Friedman's comment was intended as an opinion regarding work in general, which would be an issue reserved for the Commissioner, or just Plaintiff's ability to return to his prior work. Tr. 36. The ALJ also noted Dr. Friedman's comments regarding the difficulty he had interviewing and diagnosing Plaintiff and seeming incredulity at

the incongruity of Plaintiff's presentation at the exam with still being able to live independently. *Id.*

Plaintiff argues the ALJ improperly inserted tone into Dr. Friedman's report where none existed, and disregarded a second report that indicated Dr. Friedman considered Plaintiff's impairments to be "Category 3" impairments under Washington State Labor and Industries Administrative Code, indicating Dr. Friedman must have been referring to all work when he stated Plaintiff could not return to gainful employment. ECF No. 11 at 11-12.

The Court finds no error in the ALJ's discussion. Dr. Friedman's first report is unclear as to whether he was restricting all work or just electrical work. The second report does not clarify the position the way Plaintiff argues, because despite designating Plaintiff's mental impairments as Category 3 for Labor and Industries, Dr. Friedman explicitly only restricted Plaintiff from working as an electrician, and then only based on Plaintiff's subjective reports of lack of confidence. Tr. 587. Even giving Plaintiff the benefit of the doubt and interpreting Dr. Friedman's first report as restricting Plaintiff from all gainful employment, the ALJ accurately noted this is an opinion reserved to the Commissioner and is not due any special significance. 20 C.F.R. § 404.1527(d)(3). Though Plaintiff encourages an alternative interpretation, the ALJ's interpretation of the tone of Dr. Friedman's report is reasonable and supported by substantial evidence.

### v. *Drs. Clifford and Gilbert*

The State agency non-examining doctors, Dr. Clifford and Dr. Gilbert, both reviewed the file and offered opinions as to Plaintiff's mental residual functional capacity. Tr. 85-87, 101-03. The ALJ summarized these opinions and gave them considerable weight. Tr. 37. However, the ALJ failed to acknowledge that the opinions differed somewhat, in that Dr. Gilbert opined Plaintiff's "anxiety and depression would interfere with concentration and persistence that would create

some limit in his ability to complete a normal workday or workweek." Tr. 102.[2] The RFC does not include any limitations on Plaintiff's ability to complete a normal workday or workweek. Tr. 27.

As this case is being remanded for further proceedings concerning other medical evidence, the ALJ will reconsider the entire medical record, including Dr. Gilbert's opinion.

### B. Non-acceptable medical sources

In March 2014, Plaintiff was seen at the University of Washington Headache Clinic by ARNP Sau Mui Chan-Goh. Tr. 362. Plaintiff was complaining of worsening headaches since his electrocution accident, along with memory trouble, difficulty concentrating, dizziness, mood lability, and confusion. Tr. 363. Following this visit, ARNP Chan-Goh completed a Department of Labor and Industries form noting Plaintiff was not released to any work from August 2013 through an undeterminable date. Tr. 489. The ALJ failed to mention this opinion in his decision.

In May 2015, Plaintiff established care with ARNP Cari Cowin. Tr. 595. For the following year and a half, Ms. Cowin repeatedly noted Plaintiff was not able to work due to his psychological symptoms and cognitive deficits. Tr. 596, 599, 600, 603, 606, 608, 610-11, 612, 615, 617, 621, 625, 626, 628, 629, 632, 633, 636, 639, 643. While many of these notes contained little explanation for this opinion, ARNP Cowin occasionally elaborated: "He really isn't cognitively sound enough to complete a day of work," Tr. 606, and "He is unstable psychologically,"

---

[2] The ALJ's summary referenced only the opinion from Dr. Clifford that "his anxiety would interfere with concentration and task persistence at times but he retains the capacity to carry out work activities most of the time." Tr. 38, 87.

Tr. 611.[3] The ALJ did not mention any of these treatment notes or opinions in his decision.

While an ALJ is not required to discuss every piece of evidence, he is required to explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The fact that Plaintiff's treating providers believed him incapable of working due to his cognitive and psychological impairments is significant probative evidence. On remand, the ALJ will consider this evidence and give germane reasons if the opinions are discounted. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**2.  Plaintiff's subjective complaints**

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 11 at 19-21.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

---

[3] At one visit in March 2016, ARNP Cowin stated Plaintiff was not employable as an electrician, but could do less complicated work. Tr. 619.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 33. The ALJ found the evidence to be inconsistent regarding the extent of Plaintiff's memory and concentration deficits, and found his demonstrated activities to show Plaintiff retained fair abilities in this area. *Id.* The ALJ further noted Plaintiff's long history of being able to work with headaches and the eventual improvement of his headaches following adjustments to his shunt. Tr. 34.

The ALJ failed to offer clear and convincing reasons for finding Plaintiff's subjective symptom testimony to be unreliable. While a claimant's daily activities may support an adverse finding if the activities contradict the claimant's other testimony, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). The ALJ found the evidence demonstrated Plaintiff had memory and concentration deficits, but that "it is not an utterly disabling condition," as his ability to drive and grocery shop demonstrated fair abilities. Tr. 33. "The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits." *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7. The ALJ failed to explain how the ability to drive and grocery shop were inconsistent with Plaintiff's allegations of disabling mental impairments.

The ALJ's discussion of Plaintiff's headaches is similarly insufficient. The ALJ is correct that Plaintiff reported his headaches to have returned to pre-injury level by late 2014, and that he declined drug therapies, reporting he was satisfied with the level of pain control received from ibuprofen. Tr. 442, 449. However, at

the same time, Plaintiff reported that his primary concerns were other symptoms, including dizziness, mood lability, cognitive trouble, confusion, and other weird sensations he could not describe in words. Tr. 362. This is consistent with Plaintiff's reports throughout the record. Tr. 357-58, 394, 416-17, 432, 465-66, 513-14, 520, 529, 595, 599, 605, 662. The fact that one condition was somewhat controlled and was no longer his primary concern does not eliminate the difficulty he continued to experience from other symptoms.[4]

To the extent the ALJ implies Plaintiff's allegations are not supported by the objective evidence, this alone is an insufficient basis upon which to reject his statements. *Reddick*, 157 F.3d at 722.

Upon remand, the ALJ shall re-evaluate Plaintiff's statements and testimony along with the benefit of the reconsidered medical evidence. The ALJ shall reassess what statements, if any, are not consistent with the medical evidence and other evidence in the record, and what specific evidence undermines those statements.

**3. Third party evidence**

Plaintiff argues the ALJ erred in rejecting the evidence provided by Plaintiff's siblings. ECF No. 11 at 15-17.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

This claim is being remanded for reevaluation of the medical evidence and

---

[4] Despite headaches no longer being his primary concern, Plaintiff continued to report having headaches throughout the record. Tr. 514, 532, 595, 599-600, 608, 618, 629.

Plaintiff's subjective reports. Therefore, upon remand the ALJ will also readdress the evidence submitted by Plaintiff's siblings regarding his functional abilities.

**4.     Step three findings**

Plaintiff argues the ALJ failed to properly assess the Listings at step three. ECF No. 11 at 17-19. Specifically, Plaintiff asserts the ALJ erred in failing to discuss why the elements of Listing 11.02B were not met, and in assessing his level of functioning in the "paragraph B" criteria. *Id.*

A claimant is considered disabled at step three when his impairment meets the durational requirement and his impairments meet or equal a listed impairment in Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990); *Lewis*, 236 F.3d at 512.

At step three the ALJ found there was no evidence to show the existence of any impairment that met the criteria of any of the listed impairments in the Regulations. Tr. 25. He discussed the factors to be considered when assessing migraines under 11.02B and 11.02D. *Id.* The ALJ went on to discuss the detailed requirements of Listing 12.00 and the relevant "B criteria." Tr. 25-26. He did not specifically discuss why the criteria of Listing 11.02B were not met or equaled.

To meet Listing 11.02B, an individual must have "epilepsy, documented by a detailed description of a typical seizure and characterized by . . . (B) dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.02B. Dyscognitive seizures "are characterized by alteration of consciousness

without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." *Id.* at 11.00H1b.

The record fails to establish any plausible argument that the listing was met or equaled. *Lewis*, 236 F.3d at 514. The record contains no indication that Plaintiff's headaches cause any alteration to his consciousness. The ALJ discussed the longitudinal medical record, and thus was not required to discuss why the elements of each listing were not met.

With respect to the assessment of the B criteria, Plaintiff has failed to show that the ALJ erred in his evaluation of the evidence. The ALJ discussed at length each of the B criteria and the evidence he relied on in reaching the ratings in the various categories. Tr. 26. Though Plaintiff encourages a different interpretation of the record, the ALJ's conclusions are supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall reassess the medical

evidence, reevaluate Plaintiff's subjective complaints and the testimony of the third-parties, formulate a new RFC, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED June 18, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE